Curia, per

Dargan, Ch.
Mrs. Margaret Ingram died intestate. Her heirs at law and distributees were her grandchildren, namely, the children of her deceased son,Ingram, and the children of her deceased daughter, Sarah Clanton. In July, 1831, a bill was filed by the Ingrams against the children of Sarah Clanton, for a partition of the estate of their grandmother, Mrs. Margaret Ingram. Win. K. Brummitt became the guardian of the infant children of Sarah Clanton, and Beckham was his surety. Brummitt received at different times payments' as it was supposed on account of the distributive shares of his wards, amounting in the whole to $426 51. On further investigation, it appeared that Mrs. Clanton or her husband in her lifetime had received, in the way of advancements, more than her due share of the *174 estate of the intestate, and consequently that her children were entitled to nothing more. The sum of $426 51 was therefore inadvertently and improperly paid to their guardian, py tpe mutual mistake of all the parties. On ascertaining these facts, the Ingrams filed their bill against Brummitt, the guardian, claiming a restitution of that sum, as money paid by mistake. On the final hearing of this bill, they obtained a decree against Brummitt for the amount thus paid him by mistake, issued their fi. fa., levied on his property, and sold out his entire estate, without obtaining enough to satisfy their decree against him ; and he is now insolvent. Subsequent to the decree against Brummitt in favor of the Ingrams, his own wards filed a bill against him and his surety, Beckham, for an account. And they were held not to be entitled to recover against Brummitt and his surety the amount which had been recovered by the Ingrams against the guardian, as for money paid him by mistake, and to which his wards had no right.
Brummitt having proved to be insolvent, and the Ingrams having failed to collect by the sales of his property the amount of their decree against him for the money which had improperly gone into his hands as guardian, have filed their present bill- against Brummitt, and his surety Beckham, in which they seek to recover from the surety the balance of their decree against Brummitt.
I think I may safely assume, that there is no legal or equitable obligation resting upon the surety, farther than he may be considered as bound by his contract. He stands in no fiduciary relation to these parties, or any of them, and he was in no ways instrumental in this fund coming improperly into the hands of Brummitt. He is entitled to stand upon the terms of his bond ; and if these do not bind him to pay this claim, he is not'bound at all. And what are his liabilities on his bond, and for what ends and purposes did he become bound? Not, certainly, that the guardian should faithfully administer funds that should come into his hands, to which his wards were not entitled, and for which' they could not compel him to account. Beckham was the surety of Ingram. For the performance of what duties .on the part of Brummitt, did he bind himself? This Court, in considering the liabilities of the surety, cannot travel out of the terms of the bond, which alone creates the privity between him and the wards of his principal. The surety bound himself that his principal should bring up and educate his wards, &c., “ and when they should co.me of age, he should pay over and deliver to them all the estate and effects of the above named infants, or that they may be entitled to receive; and in case of the death of the infants, to such person or persons as may, by law, be entitled to the estate of the above named infants.” These are *175 the whole of the obligations which Beckham has assumed. Has his principal failed in any of these particulars? he has, does that constitute a just ground of complaint for any but the wards themselves? The complainants in this case seek to make the surety liable, not for the mal-adminis-tration of the wards’s estate, but for not paying a debt which he owed them. There is a privity between the surety and the wards through the operation and terms of the bond. But there is no privity between the surety and these complainants.
If the guardian had, in behalf of his wards, recovered a negro in an action against B, and thus acquired the possession ; and afterwards, A bad recovered the same negro by a better title, in an action against the guardian, it would hardly be supposed that the surety would be bound, upon such a contract as I have above quoted, to make good the verdict. If a sheriff receive money on a judgment, before an execution is lodged, his surety would not be bound, because though he receives it colore officii, he is not entitled to receive it, and does not receive it in his official capacity. If an administrator receives, on account of his intestate’s estate, the rents of lands, his surety is not bound for his faithful disbursement of funds so received, because he only bound himself for the administration of the personal estate. And much less would he be bound to third persons, who were strangers in interest to the estate which he represented, for any liability or damages he ■might incur for intermeddling with property which he supposed to belong to his intestate’s estate, and which should turn out to be a mistake.
I am at a loss to perceive any ground upon which this bill can be maintained. The decree is affirmed, and the appeal dismissed.
Dunkin, C., concurred.

Decree affirmed.